UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAQUAN WILLIE HASS,

        Plaintiff,                  Case No. 2:21-cv-91

v.                                     Hon. Hala Y. Jarbou

CONNIE HORTON, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF

employees: Warden Connie Horton; Acting Deputy Wardens Unknown Miller, Unknown Corrigan, and Unknown Bathal; Resident Unit Manager Unknown Corey-Spiker; and Correctional Officers Unknown Meehan, Unknown Russo, Unknown Greenleaf, Unknown Benson, Unknown Portice, Unknown Lumsden, Unknown Woodard, Unknown Osborne, Unknown Gugin, Unknown Smart, Unknown Hascall, and Unknown Trestrail.

Plaintiff's complaint resembles a list of vague, general grievances against each defendant rather than a set of factual allegations. For example, the first three allegations read as follows:

> Warden Connie Horton: She refused to meet with me at any time I've requested on behalf or her staff [sic] and they conduct towards me[.]
>
> ADW Miller: I've tried several times to get him to talk to me[.] I even wrote kites letting him know I have major issues but [he] refused to come sit down with me[.]
>
> ADW Corrigan: he also refused to come meet me after my mother called up here and down to Lansing[.]

(Compl., ECF No. 1, PageID.5.) Although several of Plaintiff's allegations offer a modicum more substance and a few others provide conclusory legal statements, all of his allegations are as vague and generalized as the three allegations quoted above.

Plaintiff utterly fails to provide any timeline of events beyond a single reference to an assault on April 12, 2019,[1] during which he lost the documentation of his grievances. It appears that Plaintiff's earliest allegations assert that Defendants Meehan and Russo harassed and threatened him. Plaintiff alleges that he reached out to Defendants Bathal and Corey-Spiker, but both failed to help him. Plaintiff apparently also sent kites, wrote grievances, and reported the conduct to his mother. Plaintiff's allegations suggest that his mother—on multiple occasions—

---

[1] It does not appear that Plaintiff alleges that any of the Defendants were involved in the assault. Instead, Plaintiff alleges that Defendant Russo "made several sexual comments" related to Plaintiff "when [Plaintiff] was assaulted . . . [on] 04-12-2019." (Compl., ECF No. 1, PageID.5.)

2

called the prison, the Office of the Attorney General, and the Office of the Governor on Plaintiff's behalf.

The remainder of the allegations appear to relate to Defendants' responses to Plaintiff's kites and grievances, and, in particular, to calls from his mother. Defendant Greenleaf allegedly told Plaintiff that he would do what he could to prevent Plaintiff from getting a job because Plaintiff had his mother call to complain.

Defendant Portice allegedly said that he would let everyone know that Plaintiff is a "rat." Defendant Portice further took some of Plaintiff's food and told him that he would have to bribe Portice to make his life easier at URF.

Defendant Lumsden allegedly told Plaintiff that he would "have a hard time" if he wrote further grievances lying about his conduct. (*Id.*, PageID.6.) Plaintiff further alleges that Defendant Lumsden said he would make sure Plaintiff got stabbed if Plaintiff had his mother call the Governor's or Attorney General's offices.

Defendant Benson allegedly advised Plaintiff that he was "on the wrong path" by having his mother make phone calls on his behalf. Plaintiff appears to further allege that Defendant Benson writes Plaintiff misconduct tickets and makes "little slick remarks." (*Id.*)

Defendant Trestrail allegedly told Plaintiff that if he continued complaining to State offices in Lansing, Trestrail would complicate Plaintiff's efforts to seek parole. Plaintiff further alleges that Defendant Trestrail stated that he would inform other prison staff that Plaintiff is a rat if he ever returned to a security level 2 unit.

Defendant Woodard allegedly called Plaintiff "fag" and "rat" on multiple occasions. Plaintiff also alleges that Defendant Woodard wrote Plaintiff misconduct tickets.

Defendant Osborne allegedly made distasteful comments about Plaintiff's deceased aunt and said that Plaintiff would have a difficult time while in segregation.

Plaintiff alleges that Defendant Gugin "stopped by [Plaintiff's] door . . . and stated [']enjoy your time here in the hole because I am [enjoying it.']]" (*Id.*)

Defendant Smart allegedly refused to give Plaintiff a grievance form when Plaintiff requested one.  Plaintiff alleges that Defendant Smart said that URF staff would throw Plaintiff's grievances away.

Defendant Hascall allegedly refused to give back Plaintiff's clothes and linens after prison staff used "gas" on Plaintiff.  Plaintiff alleges that he eventually received his clothes and linens only because he had his mother call and complain.

Plaintiff seeks $10 million in damages and for each defendant "to be fired and the[ir] pensions taken away . . . ." (*Id.*, PageID.7.)

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

4

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. First Amendment

Plaintiff arguably alleges that several defendants retaliated against him, and that Defendant Smart denied him the ability to petition the government for redress, both in violation of the First Amendment.

#### A. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

5

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claims suffer from several defects. First, although his filing of prison grievance qualifies as protected conduct, *see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), his mother's phone calls do not. Plaintiff did not himself engage in protected conduct when his mother called State offices and the prison. Consequently, Plaintiff fails to state a retaliation claim for any purported adverse actions triggered by his mother's phone calls.

Moreover, to the extent Plaintiff alleges that his prison grievances motivated any conduct, he fails to show that the conduct was an adverse action. Plaintiff alleges that several defendants called him names and issued vague threats. To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Put simply, the conduct Plaintiff alleges that defendants engaged in does not satisfy the adverse-action standard.  To the extent Plaintiff alleges that several defendants called him names, that conduct is insufficient to constitute adverse action, because recognition of such a standard would "trivialize the First Amendment." *Thaddeus* 175 F.3d at 398–99.

Plaintiff's remaining allegations of threats similarly fall short.  Defendants' alleged threats were entirely vague and were unaccompanied by any actual conduct, such as the writing of a misconduct ticket or a Notice of Intent.  The Court concludes that such vague statements would not deter a person of ordinary firmness from exercising his or her First Amendment rights.  *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action.").  Accordingly, Plaintiff's retaliation claims are properly dismissed.

### B. Right to petition the government

Plaintiff's allegations that Defendant Smart refused to provide him a grievance form similarly fails to state a First Amendment claim. Defendant Smart's actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable First Amendment claim.

IV. **Eighth Amendment**

Plaintiff further arguably alleges that defendants violated his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

To the extent Plaintiff alleges an Eighth Amendment violation, he fails to state a claim. None of the vague threats or harassment that Plaintiff alleges rises to the level of an Eighth Amendment violation. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir.

Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from

proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   July 14, 2021                               /s/ Hala Y. Jarbou
                                                     HALA Y. JARBOU
                                                     UNITED STATES DISTRICT JUDGE